IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KIMBERLY H.[1], ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:22cv00044 |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Kimberly H. ("Kimberly") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Kimberly alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) evaluate the evidence regarding Kimberly's impairments; and (2) consider her medically required use of a cane for balance and walking.

I find that the ALJ failed to properly consider whether Kimberly requires a cane for balance and walking. Accordingly, I **RECOMMEND GRANTING IN PART** the Plaintiff's Motion for Summary Judgment (Dkt. 12), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. 13), and **REMANDING** this case for further administrative proceedings consistent with this opinion.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

support the Commissioner's conclusion that Kimberly failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted).

## CLAIM HISTORY

Kimberly filed for DIB benefits in September 2019, claiming that her disability began on June 13, 2017,[3] due to right hip problems, including bursitis and labral tear, mild depression, and high blood pressure and cholesterol.[4] R. 84. The state agency denied Kimberly's claims at the initial and reconsideration levels of administrative review. R. 84–114. Kimberly's date last insured was June 30, 2021; thus, she would need to show that her disability began on or before this date and existed for twelve continuous months to receive disability insurance benefits. R. 15; U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). ALJ Christian Bareford held a hearing on August 6, 2021, where vocational expert Rick Bradley testified and Kimberly was represented by counsel. R. 29–68. On August 20, 2021, the ALJ entered his decision considering Kimberly's claim under the familiar five-step process[5] and denying her claim for benefits. R. 15–23.

---

[3] Kimberly amended her alleged disability onset date from February 24, 2016 to June 13, 2017. R. 17.

[4] Kimberly was 57 years old on her date last insured, making her a person of advanced age (age 55 or older).

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work

The ALJ found that Kimberly suffered from the severe impairments of post-traumatic osteoarthritis of the hip and trochanteric bursitis.[6] R. 17. The ALJ determined that her depression was a non-severe mental impairment. Kimberly had no limitations in the broad functional areas of understanding, remembering, or applying information and adapting or managing oneself, and mild limitations in interacting with others and concentrating, persisting, or maintaining pace. R. 18. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 19. Specifically, the ALJ considered impairments listed in 1.00 (musculoskeletal disorders). R. 19.

The ALJ concluded that Kimberly retained the residual functional capacity ("RFC") to perform a limited range of medium work. R. 19. Specifically, Kimberly can lift, carry, push, and pull 25 pounds both occasionally and frequently, and can sit, stand, and walk six hours each per day. Kimberly can frequently climb ramps and stairs, balance over narrow, slippery, or erratically moving surfaces, and stoop kneel, crouch, and crawl. She can also frequently work at unprotected heights, and in close proximity, within arms' reach, of dangerous, moving, and mechanical parts. Kimberly can only occasionally crawl and climb ladders, ropes, and scaffolds, and she must avoid concentrated exposure to extreme cold.[7] R. 19–20. The ALJ determined that Kimberly was capable of performing her past relevant work as a shipping supervisor. R. 23. Thus, the ALJ concluded that Kimberly was not disabled. R. 23. Kimberly appealed and the Appeals Council denied her request for review on December 16, 2021. R. 1–3.

---

experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[6] The ALJ determined that Kimberly's chronic kidney disease, chronic obstructive lung disease, hypertension, and hypercholesterolemia were non-severe impairments. R. 17.

[7] The RFC is internally inconsistent, as it indicates Kimberly can both "frequently" crawl and only "occasionally" crawl. R. 20. At the hearing, the transcript shows the ALJ questioned the vocational expert about occasional, not frequent crawling. R. 56–57.

## ANALYSIS

Kimberly alleges that the ALJ erred by failing to properly: (1) evaluate the evidence regarding Kimberly's impairments; and (2) consider whether she required the use of a cane for balance and walking in determining her RFC.

### A. Medical History Overview

Kimberly has a history of hip pain dating from a workplace injury in 2001, when she "was crushed by a tractor-trailer garage door and suffered an acetabular fracture." R. 689. In 2015 she was diagnosed with a labral tear, requiring arthroscopic reconstruction in May 2016. R. 689, 1153. She reinjured her right hip in December 2017, suffering another labral tear, and underwent a second right hip arthroscopy on June 13, 2017.[8] R. 689, 1140, 1148–49. Kimberly reports "significant pain" since the second right arthroscopy in June 2017, also her alleged onset date. R. 689. Records dating from June 2017 show treatment for trochanteric bursitis of the right hip primarily with medication and steroid injections, with physical therapy and aquatic exercise recommended. See e.g. R. 656, 660-61,667, 669, 671, 677–78.

In March 2018, Kimberly's primary care doctor, Syed Haider, M.D., referred her to pain management doctor, Anthony Dragovich, M.D., who she began treating with in May 2018. R. 654, 689. Dr. Dragovich assessed Kimberly with chronic pain syndrome, trochanteric bursitis, degenerative arthritis of hip, and posttraumatic osteoarthritis of the hip. R. 692. Kimberly had regular pain management treatments during the relevant period, including prescriptions for norco and hydrocodone.[9] At appointments between July 2020 and July 2021 she reported she had been

---

[8] Notably, this second surgery is absent from the ALJ's opinion, who references only the right hip arthroscopy due to labral tear in May 2016, but not the June 13, 2017 surgery, which coincides with Kimberly's alleged onset date. R. 21.

[9] Kimberly was consistently noted as "low risk" on her opioid risk score by her pain management doctor, Dr. Dragovich.

able to do chores at home and take care of her grandchildren, though lifting the grandchildren made her hip pain "much worse." R. 880, 884, 1161, 1165, 1169.

1. Medical Opinions

In November 2020, state agency physician Robert McGuffin, M.D. reviewed the record and found Kimberly was capable of a limited range of medium work. R. 108–11. The ALJ found this opinion "mostly persuasive." R. 22.

In December 2020, Dr. Haider, Kimberly's treating physician, provided a Medical Source Statement diagnosing Kimberly with post-traumatic osteoarthritis and indicating that she was "always in pain," would require frequent unscheduled breaks, and would be able to sit for less than four hours and stand or walk for less than two hours in a workday, due to her severe, chronic, right hip pain. R. 893–94. The ALJ found this opinion not persuasive. R. 22.

In July 2021, Dr. Dragovich also provided a Medical Source Statement, indicating that Kimberly suffers from right hip pain that would require frequent unscheduled breaks and cause her to miss work more than three times a month. R. 1187–89. Like Dr. Haider, Dr. Dragovich limited Kimberly to sitting less than four hours and standing/walking less than two hours. R. 1188. The ALJ found this opinion not persuasive.

B. Cane Use

The ALJ provides no clear explanation of whether a cane was medically necessary in this case. I infer that the exclusion of a cane from the RFC means the ALJ found a cane not medically necessary; however, the ALJ never effectively analyzes whether the medical evidence shows Kimberly requires a cane. Of course, even if a cane is prescribed, as here, it does not necessarily mean it is "medically required" as determined by the regulations. Scheuvront v. Berryhill, No. 3:17-CV-84, 2018 WL 3148230, at *5 (N.D.W. Va. Feb. 8, 2018) (collecting cases). The ALJ

must consider not just whether a cane has been prescribed, but instead must determine whether a claimant's use of a cane is medically necessary. See e.g. Titles II & Xvi: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, SSR 96-9P (S.S.A. July 2, 1996) ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed. . .."). While it is Kimberly's burden to establish that a cane is medically necessary, here the ALJ failed to show that he considered her evidence, including her doctor's medical source opinion and her testimony related to her cane.

The ALJ acknowledges counsel's submission indicating that Kimberly's cane use was deemed medically necessary, as well as Kimberly's prescription for a cane. R. 20–22.[10] The ALJ writes that, "Despite a prescription for [a] cane, these records are not consistent with that physician's notes upon physical examination of [Kimberly]. Thus, the objective findings do not support the severity of [Kimberly's] allegations." R. 22. This is simply not an adequate explanation of whether Kimberly medically requires a cane, as the ALJ's reasoning is unclear and unfinished.

The ALJ did not discuss Kimberly's testimony at the hearing that she needed a cane to walk on uneven surfaces in her yard, or if she is going to "go any sort of distance," and that she took the cane with her when she left the house, including using it to support her when her hip gives out so that she does not fall. R. 66–67. The ALJ also did not discuss Kimberly's function report from October 2019 where she reports using a cane, indicating she carries it "to alleviate

---

[10] Specifically, the ALJ writes that counsel "submitted a statement indicat[ing] that [Kimberly's] use of a cane was deemed medically necessary." R. 21. And further, "[Kimberly] underwent another trochanteric bursa injection in October 2020 and received a prescription for a cane." R. 21–22.

7

some weight" when walking.[11] R. 535. The vocational expert specifically testified at the hearing that if Kimberly required a cane, then she could not perform her past relevant work, or any work at the medium level of exertion. R. 62.

The ALJ writes that "Kimberly's pain and functional mobility improved due to an effective treatment regimen" and that by "August 2020 [Kimberly] did not report any pain or arthralgias." R. 21–22. First, this is not a specific discussion of whether a cane is medically required. Further, evidence in the record shows that, despite her medication and treatment, Kimberly still suffered significant pain and reported pain to her providers after August 2020.[12] In October 2020 she presented to Dr. Dragovich complaining of severe right lower extremity pain "localized to the hip" as well as "generalized body pain." R. 884. Likewise, Dr. Dragovich's opinion, including work-preclusive limitations caused by hip pain, was issued in July 2021. R. 118–89.

Both Kimberly's treating family doctor and treating pain management doctor provided opinions that her persistent hip pain caused her to require frequent unscheduled breaks and be able to sit less than four hours and stand/walk less than two hours, significantly less than the RFC imposed for medium work, of sitting, standing, and walking for six hours each day. R. 19, 893, 1188. Dr. Haider states in his Medical Source Statement in December 2020 that a cane was "medically necessary" (R. 894), while Dr. Dragovich indicated Kimberly did not need an assistive device for walking. R. 1188. However, the ALJ did not discuss either statement. The ALJ determined that Drs. Haider and Dragovich's opinions were not consistent with the medical

---

[11] Kimberly specifies that she was previously prescribed a walker and brace after having surgery.

[12] It is unclear what appointment the ALJ refers to, as his record cite actually relates to a September 2020 appointment, where Kimberly's chief complaint is listed as a follow-up for "multiple medical problems." While she is assessed as "reporting no arthralgias/joint pain" her hip issues are not actually addressed at all, including no mention of hip surgeries. R. 867–69.

evidence and were not persuasive, writing, "Indeed, a follow-up examination was performed in January 2020 for pain that was localized in the right hip." R. 22. This reasoning is confusing, as both doctors also specified Kimberly's pain was localized in her right hip. R. 894, 1187. The medical record cited indicates Kimberly "is having increased hip pain, but overall doing well" with medication improving her pain and function by 50%, with current pain of 6, and pain medication decreasing her pain level by 40%. R. 830. The ALJ has simply failed to explain how this record, from a visit with Dr. Dragovich, is inconsistent with Dr. Dragovich's and Haider's opinions about Kimberly's limitations, caused by her hip pain.

      Likewise, while also not a specific discussion of cane usage, the ALJ refers to Kimberly's ability to work in her yard and take care of her grandchildren, as undermining her allegations, without considering the limited extent to which she can do these activities. R. 21–22. In Kimberly's function report from 2019, she indicates that because of her pain she "can only do very light yard work for 5–10 minutes at a time." R. 533. She also writes that she "love[s] yard work but can no longer do more than pull up weeds." R. 531. At the hearing Kimberly explained that she takes care of her grandchildren on a "last resort, as-needed basis", stating that her daughter, who is in the military, generally has someone else to watch her children, but if that person has an appointment, she "may watch them for an hour or two." R. 52. Counsel asked several follow up questions during the hearing, as follows:

> Question: [I]f you were watching your grandkids, and you had a flare-up of your hip or back pain, is there someone there to [] help out? Does your husband have to come . . . step in and help out?
>
> Kimberly: My husband's work has granted him FMLA just for that . . . he can get off work under FMLA . . . and come home and take care of the children [which] he's had to [do a couple times].

9

R. 52–53. The ALJ never discussed this explanation, or acknowledged that Kimberly received help, as needed, watching the children.[13]

The ALJ's opinion does not explain how, or even if, the ALJ considered whether Kimberly medically required a cane, and thus whether the RFC should provide for cane use.[14] This is despite Kimberly's prescription for a cane, her function report stating she needs a cane, her hearing testimony that she needs a cane, and one treating doctor's medical source opinion that she medically requires a cane. See Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (holding that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'") (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Accordingly, I conclude that the ALJ's decision is not supported by substantial evidence.[15]

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** entering an order **DENYING** the Commissioner's motion for summary judgment, **GRANTING in part** Plaintiff's motion for summary judgment, and **REMANDING** this case to the Commissioner.

The clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to

---

[13] The ALJ did acknowledge at one point in his opinion that Kimberly can only watch her grandchildren for 1 to 2 hours. R. 20.

[14] While the ALJ may not be required to specifically state that a cane is not required, the ALJ still must consider the evidence related to whether a cane is medically necessary in his opinion.

[15] Because I find that remand is warranted based on the ALJ's failure to adequately consider whether Kimberly medically required a cane, Kimberly's additional allegations of error will not be decided. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

        Entered: January 5, 2023

        *Robert S. Ballou*

        Robert S. Ballou
        United States Magistrate Judge